**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SHANNON SELBY**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,** and **COGNIZANT TRIZETTO SOFTWARE GROUP, INC.**<br><br>Defendants. | No.:<br><br>Hon.<br><br>Mag. |

**COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Shannon Selby, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Cognizant Technology Solutions Corporation ("Defendant Cognizant"), Cognizant Technology Solutions U.S. Corporation ("Defendant Cognizant U.S."), and Cognizant TriZetto Software Group, Inc. ("Defendant TriZetto"), (collectively, "Defendants") to recover unpaid overtime compensation, liquidated damages, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201, *et seq*., the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq*. and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters.

**JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

2. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1376 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

4. Each of Defendants' annual sales exceed $500,000 and have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

5. This Court has personal jurisdiction over Defendant Cognizant because it is headquartered and maintains its principal place of business in Teaneck, New Jersey, regularly conducts business within the State of New Jersey, and purposely avails itself of the benefits and protections of New Jersey law.

6. This Court has personal jurisdiction over Defendant Cognizant U.S. because it is headquartered and maintains its principal place of business in Teaneck, New Jersey, regularly conducts business within the State of New Jersey, and purposely avails itself of the benefits and protections of New Jersey law.

7. This Court has personal jurisdiction over Defendant TriZetto because it operated as part of a common enterprise and as a joint employer with Defendants Cognizant and Cognizant U.S., whose principal places of business are in Teaneck, New Jersey. Defendant TriZetto is also

registered to do business in New Jersey.

8. Venue lies in in this District pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendants conduct business in this District.

## PARTIES

9. Plaintiff is an adult resident of Godfrey, Illinois and has been employed by Defendants since approximately October 2019. Plaintiff's consent to join form is attached as **Exhibit A**.

10. Plaintiff and the putative collective members consist of current and former customer service representatives, or other similar customer service positions, who were compensated on an hourly basis, (collectively "CSRs"). Throughout the relevant period, Defendants maintained a corporate policy and practice of failing to compensate their CSRs for all pre-shift off-the-clock work.

11. Defendants are information technology and business process service providers and consultants. Defendant Cognizant is the parent company to a global conglomerate of entities.

12. Defendant Cognizant U.S. is a subsidiary of the parent for managing its North America operations.

13. Defendant TriZetto is a wholly owned subsidiary of Defendant Cognizant following a 2014 acquisition.[1] Defendant TriZetto is the primary healthcare software subsidiary of Defendants' conglomerate.

14. Defendants' main United States corporate operations are based at the headquarters in Teaneck, New Jersey.

---

[1] https://news.cognizant.com/2014-11-20-Cognizant-Completes-Acquisition-of-TriZetto-Creating-a-Fully-Integrated-Healthcare-Technology-and-Operations-Leader (last visited August 24, 2026).

15. Defendant TriZetto also maintains key operational hubs in at least Englewood, Colorado and Earth City, Missouri.

16. Defendant Cognizant is a Delaware corporation headquartered at 300 Frank Burr W. Blvd., Suite 36, 6th Floor, Teaneck, New Jersey 07666. Defendant Cognizant is registered to do business in New Jersey (Corp ID 0100767206) and maintains a registered agent for purposes of service as the Corporation Service Company, Princeton South Corporate Ctr, Ste 160, 100 Charles Ewin Blvd, Ewing, NJ 08628.

17. Defendant Cognizant U.S. is a Delaware corporation headquartered at 300 Frank Burr W. Blvd., Suite 36, 6th Floor, Teaneck, New Jersey 07666. Defendant Cognizant U.S. is registered to do business in New Jersey (Corp ID 0100737184) and maintains a registered agent for purposes of service as the Corporation Service Company, Princeton South Corporate Ctr, Ste 160, 100 Charles Ewin Blvd, Ewing, NJ 08628.

18. Defendant TriZetto is a Delaware corporation headquartered in either Colorado or Missouri. Defendant TriZetto is registered to do business in the state of New Jersey (Corp ID 0100760065) and maintains a registered agent for purposes of service as the Corporation Service Company, Princeton South Corporate Ctr, Ste 160, 100 Charles Ewin Blvd, Ewing, NJ 08628.

19. At all relevant times, Defendants were a common enterprise and "joint employers" of Plaintiff and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. 791.2(a).

## STATEMENT OF FACTS

20. Plaintiff has worked for Defendants as a non-exempt, hourly CSR employee since October 2019.

21. Plaintiff initially worked at Defendant TriZetto's Earth City, Missouri office, then began working from home as a result of the COVID-19 pandemic. From approximately the end of

2023 to the end of 2024, Plaintiff worked 1 day in-office at the TriZetto Earth City, Missouri office. She has been working fully remotely from her home in Illinois since approximately the end of 2024.

22. Plaintiff's current hourly rate of pay is $21.82.

23. Defendants compensated their CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

24. Regardless of which of Defendants' locations CSRs worked out of, all CSRs attended the same orientation program upon their hire.

25. Plaintiff's initial training included demonstrations of how to log in and use Defendants' phone systems (Cisco Finesse and WebEx) and time reporting program (Compass.talent).

26. Plaintiff's initial training also included explanation of Defendants' policy that CSRs must be in "ready" status in Cisco at the start of their scheduled shifts. More specifically, Defendants' policy included a six-minute "grace period" following CSRs scheduled start of shift for CSRs to be in "ready" status and prepared to take customer phone calls. CSRs who were non-compliant with this policy were subject to disciplinary procedures.

27. Defendants failed to compensate their CSRs, like Plaintiff, for all work performed. Instead, Defendants required their CSRs to perform compensable work before their scheduled shifts when they were not clocked into Defendants' timekeeping system. This corporate policy and practice resulted in CSRs not being paid for all time worked.

28. Defendants, through their managers, had actual and constructive knowledge that the CSRs were completing this off-the-clock work without compensation. Nevertheless, Defendants suffered or permitted, and in fact, trained and required, their CSRs to complete this

unpaid work.

29. Defendants' CSRs were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

**Pre-Shift Off-the-Clock Work**

30. CSRs were required to be fully logged into Defendants' computer network, customer systems, and phone systems and ready to take calls within exactly six minutes (or less) of their scheduled shifts.

31. To meet this requirement, CSRs were required to arrive early to perform pre-shift boot-up and login activities before clocking into Defendants' timekeeping system.

32. All of Defendants' CSRs use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the CSRs' work, and they cannot perform their jobs without them.

33. Defendants require CSRs to perform the bulk of their job duties using a computer. Therefore, powering on and setting up the computer to be able to conduct the core functions of CSRs job duties, is an integral and indispensable part of the CSRs' work.

34. The pre-shift boot-up and login process consisted of the following steps:

a. The CSRs turned on or woke up their computer;

b. The CSRs then logged onto their computer with a username and password;

c. The CSRs then connected to Defendants' VPN using a two-factor authentication process linked to their cell phones;

d. The CSRs then opened and loaded Collabrio, a program which provided their daily schedule including expected login time as well as assigned break and lunch times;

e. The CSRs then opened and loaded Cisco Finesse and WebEx which worked in tandem as Defendants phone system connecting CSRs to customer calls;

f. The CSRs then opened and loaded Salesforce, used to retrieve customer account information and make notes during calls;

g. The CSRs then opened and loaded Azure, an internal company tool used to transmit electronic claims and remittances between providers and insurers;

h. The CSRs then opened and loaded Microsoft Outlook and Teams, allowing them to communicate and stay connected to supervisors and other employees and colleagues during their shifts;

i. Once all applications to be "phone ready" were opened, the CSRs would then navigate to the Cisco Finesse to change their status at the start of their shift.

35. The pre-shift work activities described above took substantial time on a daily basis, ranging from ten (10) to fifteen (15) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

36. CSRs who failed to complete this work before their scheduled shifts were subject to discipline.

37. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting up and logging in directly benefits Defendants and is integral and indispensable to the CSR' job responsibilities.

**Defendants Benefitted from the Uncompensated Off-the-Clock Work**

38. At all relevant times, Defendants required and directly benefited from the off-the-clock work performed by Plaintiff and all other CSRs in connection with the pre-shift activities described above.

39. At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

40. At all relevant times, Defendants were able to track the amount of time Plaintiff and all other CSRs spend in connection with pre- shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed.

41. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the other CSRs in order to pressure them into performing pre-shift work off-the-clock.

42. Because Plaintiff and all other CSRs typically worked forty (40) hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

43. Defendants are in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the CSRs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

44. For example, Plaintiff worked over forty (40) hours during the pay week beginning June 20, 2026 and less than forty (40) hours during the pay week ending June 27, 2026.

45. Defendants knew or should have known that the time spent by Plaintiff and other CSRs in connection with the off-the-clock pre-shift activities is compensable under the law.

46. Despite knowing CSRs performed off-the-clock work before and after their shifts, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

**JOINT EMPLOYMENT ALLEGATIONS**

47. At all relevant times, Defendants were, at minimum, joint employers of Plaintiff and the CSRs.

48. At all relevant times, Defendants managed the day-to-day supervision and direction of Plaintiff and the CSRs.

49. At all relevant times, Defendants' corporate policies and procedures guided and mandated Plaintiff and the CSRs' jobs.

50. At all relevant times, Defendants maintained the Plaintiff and the CSRs'

employment records.

51. The unlawful conduct at issue in this case arises from Defendants' corporate policies for CSRs.

**COMMON ENTERPRISE ALLEGATIONS**

52. As discussed herein, Defendants were engaged in a common enterprise relative to the operations and employment of Plaintiff and the CSRs.

53. Defendants were engaged in the aforementioned business for the joint purpose of providing technology services and consulting.

54. As discussed herein, Defendants loosely operated in the same or similar manner and through unified or common control.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

55. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of all of Defendants' current and former CSRs, or similar customer service positions who worked for Defendant in the United States at any time in the past three (3) years up through and including final judgment (hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

56. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

57. Plaintiff and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were subject to Defendants' pre-shift off-the-clock work but such pay was not calculated as part of their regular rate as required by the FLSA.

58. Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

59. All of the pre-shift off-the-clock work Plaintiff and the proposed FLSA Collective performed were required by Defendants, and/or Defendants were aware of all of the pre-shift off-the-clock work the Plaintiff and the proposed FLSA Collective performed.

60. Defendants were aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

61. As part of regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under forty (40) associated with unpaid overtime;

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendants; and

d. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, including the pre-shift boot-up process.

62. Defendants' unlawful conduct was (and is) widespread, repeated, and consistent.

63. Upon information and belief, Defendants utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

64. Resolution of this action requires inquiry into common facts.

65. These similarly situated individuals are known to the Defendants, are readily identifiable, and can be located through Defendants' payroll records, which Defendants are required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

66. Court-authorized notice pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and text messaging and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

67. Upon information and belief, there are hundreds, if not thousands, of similarly situated current and former employees of Defendants who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

68. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of:

> *All current and former CSRs or similar customer service positions who worked for Defendants at any location in Illinois during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff reserves the right to amend this definition if necessary.

69. The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to

identify from Defendants' computer systems and electronic payroll and personnel records.

70. There is a well-defined community of interests among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether Rule 23 Illinois Class members performed unpaid pre-shift work activities, and if so, whether such work activities are compensable; and

b. Whether Rule 23 Illinois Class members are owed wages for time spent performing pre-shift work activities, and if so, the appropriate amount thereof; and

c. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 Illinois Class.

71. Plaintiff's claims are typical of those of the Rule 23 Illinois Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

72. Plaintiff will fully and adequately protect the interests of the Rule 23 Illinois Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

74. This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

76. Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

77. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs and similar customer service positions who work or worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

78. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

79. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

c. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment/quantum meruit to Defendants.

80. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

81. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

82. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

83. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel

know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

84. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85. Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**
**(29 U.S.C. § 216(b) Collective Action)**

86. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

87. Plaintiff was an employee within the meaning of 29 U.S.C C 203(e).

88. At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

89. At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

90. Defendants are an employer within the meaning of 29 U.S.C § 203(d).

91. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

92. At all relevant times, Defendants jointly employed Plaintiff and the CSRs within

the meaning of the FLSA.

93. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

94. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

95. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

96. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

97. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

98. At all relevant times, Defendants had a policy and practice of willfully refusing to pay Plaintiff and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

99. At all times relevant to this action, Defendants required Plaintiff and all others similarly situated to regularly perform at least ten (10) to fifteen (15) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

100. In workweeks where Plaintiff and others putative Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including on-call pay where applicable. 29 U.S.C. § 207.

101. As a result of Defendants' willful failure to compensate Plaintiff and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

102. Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

103. Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their backpay. As a result of Defendants' FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendants are statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

**COUNT II**
**(On Behalf of the Rule 23 Illinois Class)**
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW ("IMWL"), §§ 820 ILCS 105/1, *et seq.***
**FAILURE TO PAY MINIMUM WAGES**

104. Plaintiff re-alleges and incorporates all previous paragraphs herein.

105. At all times relevant to the action, Defendants were an employer covered by the mandates of the IMWL, and Plaintiff and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

106. Pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiff worked more than forty (40) hours, she was entitled to be compensated at a rate of one and one-half times her regular hourly rate of pay.

107. In workweeks where Plaintiff and other Rule 23 Illinois Class members worked over forty (40) hours, Defendants failed to compensate Plaintiff and the Rule 23 Illinois Class members for the unpaid off-the-clock work time.

108. Defendants' failure and refusal to pay overtime wages for all hours worked in excess of forty (40) per week was a violation of the provisions of the IMWL, 820 ILCS § 105/4(a).

109. 820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

110. Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**COUNT III**
**(On Behalf of the Rule 23 Illinois Class)**
**VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT ("IWPCA")**
**§§ ILCS 115/1, *et seq.***
**FAILURE TO TIMELY PAY ALL WAGES EARNED**

111. Plaintiff re-allege and incorporate all previous paragraphs herein.

112. At all times relevant to the action, Defendants were an employer covered by the mandates of the IWPCA, and Plaintiff and the Rule 23 Illinois Class were employees entitled to the IWPCA's protections. *See* 820 ILCS 115/2.

113. Pursuant to 820 ILCS 115/4, Plaintiff and the Rule 23 Illinois Class were entitled to be compensated for all wages earned during a semi-monthly or bi-weekly pay period not later than thirteen (13) days after the pay period, and compensated for all wages earned during a weekly pay period no later than seven (7) days after the pay period.

114. Defendants' failure to fully compensate Plaintiff and the Rule 23 Illinois Class for all wages earned violated the IWPCA.

115. 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the IWPCA "shall be entitled to recover …the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.".

116. Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IWPCA at an amount to be proven at trial.

**COUNT IV**
**BREACH OF CONTRACT**
**(On Behalf of the Rule 23 Nationwide Class)**

117. Plaintiff re-alleges and incorporates all previous paragraphs herein.

118. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour

they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

119. Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for hourly work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

120. Defendants breached their contractual promises by failing to pay Plaintiff and the Rule 23 Nationwide Class at their fixed, pre-agreed upon hourly rate for all of the hours worked.

121. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters and performed under the contracts by doing their jobs and carrying out the work they performed each shift described herein.

122. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

123. Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of time rounded for each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

124. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated

minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

125. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT V**
**UNJUST ENRICHMENT/QUANTUM MERUIT**
**(On Behalf of the Rule 23 Nationwide Class)**

126. Plaintiff re-alleges and incorporates all previous paragraphs herein.

127. This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

128. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

129. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

130. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

131. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

132. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived

therefrom.

133. Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

134. Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

135. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

136. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. An Order authorizing Court Supervised Notice pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendants to provide Plaintiff a list of all proposed Collective Members who work or have worked for Defendants at any time in the past three years. This list shall include the last known addresses, email addresses, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

c. An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's Illinois state law claims (Count II, III);

d. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Count IV, V);

e. An Order designating the Plaintiff as representative of the Rule 23 Illinois Class and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f. An Order declaring that Defendants' violations of the FLSA were willful;

g. An Order declaring Defendants violated Illinois state law for failing to pay Plaintiff and the Rule 23 Illinois Class all wages and overtime compensation to which they were entitled;

h. An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i. An Order declaring Defendants were unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

j. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the Rule 23 Illinois Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and;

m. An Order awarding such other and further relief as this Court deems appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: October 2, 2026

Respectfully Submitted,

*<u>/s/ Nicholas Conlon</u>*
Nicholas Conlon
**BROWN, LLC**
111 Town Square Place, Suite 400

Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
nicholasconlon@jtblawgroup.com

Jason J. Thompson (P47184) (*pro hac vice forthcoming*)
Paulina R. Kennedy (P84790) (*pro hac vice forthcoming)*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
T: (248) 355-0300
F: (248) 436-8453
jthompson@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Putative FLSA Collective*